## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Religious Rights Foundation of Pa; a Pennsylvania non-profit corporation; C.Y. and L.Y. individually and as the parents and natural guardians of F.Y., a minor; B.H. and K.H. individually and as the parents and natural guardians of R.H., a minor, | : **COMPLAINT** <br> : <br> : <br> : <br> : Filed on Behalf of:  All Plaintiffs <br> : <br> : |
| Plaintiffs, | : Counsel of Record for Plaintiffs: <br> : |
| v. | : Thomas E. Breth <br> : PA. ID. No. 66350 <br> : tbreth@dmkcg.com |
| State College Area School District; Board of School Directors of the State College Area School District, | : <br> : Thomas W. King, III <br> : PA ID. No. 21580 |
| Defendants**.** | : tking@dmkcg.com <br> : <br> : **DILLON McCANDLESS KING** <br> : **COULTER & GRAHAM LLP** <br> : 128 West Cunningham Street <br> : Butler, PA 16001 <br> : Telephone: (724) 283-2200 <br> : Facsimile: (724) 283-2298 <br> : <br> : *Special Counsel for Thomas More* <br> : *Society* |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Religious Rights Foundation of PA; a Pennsylvania non-profit corporation; C.Y. and L.Y., individually and as the parents and natural guardians of F.Y., a minor; and B.H. and K.H., individually and as the parents and natural guardians of R.H., a minor. | : : : : : : : | No.: |
| Plaintiffs, | : : | |
| v. | : : | |
| State College Area School District; Board of School Directors of the State College Area School District, | : : : : | |
| Defendants. | : : : | |

## COMPLAINT

Plaintiffs, Religious Rights Foundation of PA, a Pennsylvania non-profit corporation; C.Y. and L.Y., individually and as parents and natural guardians of F.Y., a minor; B.H. and K.H., individually and as parents and natural guardians of R.H., a minor, file the within Complaint averring in support thereof as follows:

## PARTIES

1. Plaintiff, Religious Rights Foundation of PA, is a Pennsylvania non-profit corporation, organized and existing in accordance with the laws of the Commonwealth of Pennsylvania, with a mailing address of 3091 Enterprise Drive,

Suite 200, State College, Centre County, Commonwealth of Pennsylvania (hereinafter referred to as "Religious Rights Foundation").

2.   The mission of the Religious Rights Foundation and its members is to protect, defend, and promote the religious rights, beliefs, opportunities, and tenants of faith of its members, their families, and the greater faith community within the Commonwealth of Pennsylvania.

3.   The Religious Rights Foundation is acting to protect, defend and promote the religious rights of the students who are eligible to attend public school districts within the Commonwealth of Pennsylvania and to participate in the extracurricular and co-curricular activities of the public school districts, but are denied this generally available benefit due to their enrollment in a parochial school or other religious based educational institution.

4.   Plaintiffs, C.Y. and L.Y., individually and as parents and natural guardians of F.Y., a minor, are individuals residing in Centre County, Commonwealth of Pennsylvania (hereinafter referred to respectively as "Parent C.Y. Plaintiffs" and "Student F.Y. Plaintiff").

5.   Parent C.Y. Plaintiffs and Student F.Y. Plaintiff reside within the State College Area School District. Student F.Y. Plaintiff is a minor who is eligible in all material respects to attend the State College Area School District and to participate in the extracurricular and co-curricular activities of the public school district. Parent

C.Y. Plaintiffs and Student F.Y. Plaintiff are members of the Religious Rights Foundation. Parent C.Y. Plaintiffs are taxpayers in the State College Area School District and Commonwealth of Pennsylvania.

6.   Student F.Y. Plaintiff attends a parochial school located within the State College Area School District. Parent C.Y. Plaintiffs made the decision to have Student F.Y. Plaintiff attend a parochial school in the furtherance of their religious beliefs. Student F.Y. Plaintiff also made the decision to attend a parochial school in the furtherance of Student F.Y. Plaintiff's religious beliefs.

7.   Plaintiffs, B.H. and K.H., individually and as parents and natural guardians of R.H., a minor, are individuals residing in Centre County, Pennsylvania (hereinafter referred to respectively as "Parent B.H. Plaintiffs" and "Student R.H. Plaintiff").

8.   Parent B.H. Plaintiffs and Student R.H. Plaintiff reside within the State College Area School District. Student R.H. Plaintiff is a minor who is eligible in all material respects to attend the State College Area School District and to participate in the extracurricular and co-curricular activities of the public school district. Parent B.H. Plaintiffs and Student R.H. Plaintiff are members of the Religious Rights Foundation of PA. Parent B.H. Plaintiffs are taxpayers in the State College Area School District and Commonwealth of Pennsylvania.

9.   Student R.H. Plaintiff attends a parochial school located within the State College Area School District. Parent B.H. Plaintiffs made the decision to have Student R.H. Plaintiff attend a parochial school in the furtherance of their religious beliefs. Student R.H. Plaintiff also made the decision to attend a parochial school in the furtherance of Student R.H. Plaintiff's religious beliefs.

10. The above referenced parents are hereinafter collectively referred to as "Parent Plaintiffs" and the above referenced students are collectively referred to as "Student Plaintiffs."

11. As members of the Religious Rights Foundation, Parent Plaintiffs represent the interests of their minor children, along with other parents and minor children who are members of the Religious Rights Foundation and who are eligible in all material respects to attend the State College Area School District and to participate in the extracurricular and co-curricular activities of the public school district.

12. In accordance with its mission, the Religious Right Foundation is acting to protect and defend its members rights as guaranteed by the First Amendment to the Constitution of the United States of America.

13. Defendant, State College Area School District (hereinafter "District Defendant"), is a public school district organized and existing in accordance with the laws of the Commonwealth of Pennsylvania with its administrative offices

located at 240 Villa Crest Drive, State College, Centre County, Commonwealth of Pennsylvania.

14. Defendant, Board of School Directors (hereinafter "Board Defendant"), is the governing body of the State College Area School District. *24 P.S. §3-301.*

15. As the governing body, Board Defendant has various statutory powers and authority, including, but not limited to, the authority to promulgate rules, regulations, and policies regarding extracurricular and co-curricular activities within its schools. *24 P.S. §5-511.*

16. Defendants are state actors within the Commonwealth of Pennsylvania pursuant to the powers and authority granted public school districts and boards of school directors by the Pennsylvania Public School Code of 1949, *24 P.S. §1-101, et seq., et al.*

**JURISDICTION AND VENUE**

17. This Court has original jurisdiction pursuant to 28 U.S.C.A. §1331.

18. Plaintiffs reside within the jurisdiction of the United States District Court for the Middle District of Pennsylvania. Defendant is a public school district within the jurisdiction of the United States District Court for the Middle District of Pennsylvania.

19. This Court has subject matter jurisdiction pursuant to 28 U.S.C.A. §1343(a)(3)(4).

20.  Venue is proper in the Middle District pursuant to 28 U.S.C.A. §§1390(a), 1391(b)(2), as Defendant's conduct as set forth herein occurred within the Middle District of Pennsylvania.

## MATERIAL FACTS

21.  The preceding paragraphs are incorporated herein by reference and made a part hereof as if fully set forth herein.

22.  As a public school district within the Commonwealth of Pennsylvania, Defendants exist, function, and operate pursuant to the statutory powers, duties, and authority set forth in the Pennsylvania Public School Code of 1949, as amended. *24 P.S. §1-101, et al., et seq.*

23.  According to District Defendant's website, it has eight (8) elementary schools (grades K-5), two (2) middle schools (grades 6-8), one (1) high school (grades 9-12), and one (1) Delta Program, an alternative, democratic school with middle and high school levels for grades 6-12. *See https://www.scasd.org*

24.  According to District Defendant's website, Board Defendant has approved and authorized more than one hundred (100) extracurricular and co-curricular opportunities, including, but not limited to, sixty-three (63) Advanced Placement (AP) and advanced courses at the high school, seventy-six (76) high school activities and clubs, twenty-six (26) high school athletic teams, and various extracurricular and co-curricular activities at the middle and elementary schools.

25. According to District Defendant's website, "[t]he State College Area School District is an equal opportunity education institution and will not discriminate on the basis of race, color, age, creed, religion, gender, sexual orientation, gender identity, ancestry, national origin or disability in its activities, programs, or employment practices …"

26. Defendant Board has a Policy of non-discrimination that reads in relevant part "[t]he State College Area School District is committed to providing to all students access to equitable educational programs and activities in a safe, positive learning environment that is free from all forms of harassment and discrimination regardless of race, color, age, creed, religion, gender, sexual orientation, gender identity, ancestry, national origin, marital status, pregnancy or handicap/disability. …" *Policy No. 103 – Nondiscrimination/Discriminatory Harassment – School and Classroom Practices.*

27. Defendants permit students who reside within the State College Area School District and who are enrolled in a home school program "to participate in any activity that is subject to the provisions of section [5-]511, including, but not limited to, clubs, musical ensembles, athletics and theatrical productions, …" *24 P.S. §13-1327.1, Defendant Board Policy No. 137.*

28. Pursuant to the Public School Code, Defendants have the statutory power and authority to permit parochial school students to participate in the extracurricular

and co-curricular activities generally offered to the students of the State College Area School District, along with eligible home school and charter school students.

29. Paragraph (a) of Section 5-511 of the Public School Code states in relevant part at follows:

> "The board of school directors in every school district shall prescribe, adopt, and enforce such reasonable rules and regulations as it may deem proper, regarding (1) the management, supervision, control, or prohibition of exercises, athletics, or games of any kind, school publications, debating, forensic, dramatic, musical, and other activities related to the school program, including raising and disbursing funds for any or all of such purposes and for scholarships, and (2) the organization, management, supervision, control, financing, or prohibition of organizations, clubs, societies and groups of the members of any class, or school, ..."

*24 P.S. §5-511(a).*

30. Paragraph (c) of Section 5-511 of the Public School Code states in relevant part as follows:

> "The board of school directors may (1) permit the use of school property, real or personal, for the purpose of conducting any activity related to the school program, or by any school or class organization, club, society, or group, (2) authorize any school employe or employes to manage, supervise and control the development and conduct of any of such activities, (3) employ or assign any school employe to serve in any capacity in connection with any of such activities."

*24 P.S. §5-511(c).*

31. Paragraph (f) of Section 5-511 of the Public School Code states as follows:

"The board of school directors of any district is hereby authorized to appropriate any monies of the district for the payment of medical and hospital expenses incurred as a result of the participation in such athletic events or games, practice or preparation therefor, or in transportation to or from such athletic events or games, or the practice or preparation therefor, and for the purchase of accident insurance in connection with such participation and transportation."

*24 P.S. §5-511(f).*

32. Board Defendant has approved Board Policy No. 137 – <u>Home School Policy</u> which states in relevant part "… Any home schooled student who would like to participate in an instructional activity or class must submit a request to the Superintendent by a date established by the administration. Any home school students who would like to participate in co-curricular or extra-curricular activities must submit a request to the Superintendent by a date established by the administration. Home school students may participate in health services, standardized testing and the use of facilities normally available to students during the school day. …" *Defendant Board Policy No. 137.*

33. Home school students are not enrolled in the State College Area School District.

34. Home school students satisfy the educational requirements set forth in the Public School Code through a home school program.

35. Defendants provide home school students with a benefit, the ability to participate in extracurricular and co-curricular activities along instructional

activities and classes, that is generally available to the students enrolled in the State College Area School District.

36. Defendants permit students who reside within the State College Area School District and who are enrolled in charter schools to participate in its extracurricular and co-curricular activities. *24 P.S. §17-1719-A.*

37. There are several charter schools within the State College Area School District and the students attending these charter schools who reside within the State College Area School District are eligible to participate in Defendants' extracurricular and co-curricular activities.

38. Charter school students are not enrolled in the State College Area School District.

39. Charter school students are enrolled in charter schools and satisfy the educational requirements set forth in the Public School Code through a charter school program.

40. Defendants provide charter school students with benefits, the ability to participate in extracurricular and co-curricular activities, that is generally available to the students enrolled in the State College Area School District.

41. Defendants expend a significant amount of public funds to provide extracurricular and co-curricular activities, instruction activities and classes that are generally available for the benefit of students enrolled in the State College Area

School District; home school students who are not enrolled in the State College Area School District; and charter school students who are not enrolled in the State College Area School District.

42. Like home school and charter school students, Student Plaintiffs are not enrolled in the State College Area School District. Student Plaintiffs are enrolled in parochial schools and satisfy the educational requirements set forth in the Public School Code through a parochial school program.

43. Plaintiff Religious Rights Foundation joins this Complaint to protect, defend, and promote the religious rights, beliefs, and opportunities of not only the Parent Plaintiffs and Student Plaintiffs, but also, the religious rights, beliefs, and opportunities of similarly situated members of the Religious Rights Foundation.

44. Parent Plaintiffs and Student Plaintiffs are members of the Religious Rights Foundation, and they are representative of the other members of the Religious Rights Foundation who are similarly situated and/or who support the Foundation's efforts to protect the religious rights of its members.

45. Parent Plaintiffs and Student Plaintiffs have suffered, and continue to suffer, an injury in fact, as a direct result of Defendants' discriminatory conduct as set forth herein.

46. Plaintiffs' request relief that will enjoin and prohibit Defendants' from continuing to act in a discriminatory manner toward Plaintiffs and other similarly situated individuals.

**COUNT I**
**PLAINTIFFS v. DEFENDANTS**
**VIOLATION OF THE FIRST AMENDMENT**
**FREE EXERCISE CLAUSE - 42 U.S.C. §1983**

47. Paragraph 1 through 46 of this Complaint are incorporated herein by reference and made a part hereof as if fully set forth herein.

48. Parent Plaintiffs and Student Plaintiffs are residents of the State College Area School District.

49. Student Plaintiffs are eligible in all material respects to attend the State College Area School District and to participate in the extracurricular and co-curricular activities the State College Area School District.

50. If Student Plaintiffs enrolled in the State College Area School District, Student Plaintiffs would be eligible to participate in the extracurricular and co-curricular activities of the State College Area School District.

51. Parent Plaintiffs have enrolled their children (Student Plaintiffs) in parochial schools to further both Parent Plaintiffs' and Student Plaintiffs' religious beliefs.

52. Student Plaintiffs regularly participate in religious instruction and activities at their respective parochial schools.

53. Parent Plaintiffs participate in religious activities, along with their children (Student Plaintiffs), at the parochial schools.

54. The religious instruction and activities are an integral part of the educational programs provided to the Student Plaintiffs at their parochial schools.

55. By attending parochial schools, Student Plaintiffs do not have the opportunity to participate in the types of extracurricular and co-curricular activities generally available to the students of the State College Area School District, home school students, and charter school students.

56. Parent Plaintiffs have requested that Defendants permit Student Plaintiffs to participate in extracurricular and co-curricular activities of the State College Area School District.

57. Defendants have denied Parent Plaintiffs requests to permit Student Plaintiffs to participate in extracurricular and co-curricular activities of the State College Area School District.

58. Via email dated May 24, 2023, 11:30 a.m., the Superintendent of the State College Area School District, in response to Plaintiffs' request, informed Parent C.Y. Plaintiff as follows:

> "Thank you for reaching out. We have put a lot of thought into this issue through discussions with other administrators, the school board,

and our school solicitor. After carefully considering it, we cannot grant your request to change our longstanding practice of not having private school students participate on our PIAA sports teams. The reason is the district has ample, and sometimes excess, participation for our teams, so there is no need to expand. Additionally, if we allow private school students to take part, we could be taking away opportunities from SCASD students."

59. Defendants have historically refused to grant Student Plaintiffs and other similarly situated parochial school students the ability to participate in extracurricular and co-curricular activities of the State College Area School District.

60. Defendants have a "longstanding practice," custom, and policy of refusing to permit parochial school students to participate in extracurricular and co-curricular activities of the State College Area School District.

61. Defendants' rationale for its longstanding discriminatory practice(s) is two-fold: there are a sufficient number of State College Area School District students who participate in the activities; and, if permitted to participate, a parochial school student may take away an opportunity to participate from a State College Area School District student.

62. Plaintiff Religious Rights Foundation was formed and exists to help protect, defend, and promote the religious rights, beliefs, opportunities, and tenants of faith of its members, their families, and the greater faith community within the Commonwealth of Pennsylvania.

63. Defendants' discriminatory conduct towards Plaintiffs is exactly the type of discriminatory conduct that the Religious Right Foundation was formed to fight against.

64. Chief Justice Roberts of the Supreme Court of the United States recently opined, "This Court has repeatedly confirmed that denying a generally available benefit solely on account of religious identify imposed a penalty on the free exercise of religious." *See Trinity Lutheran Church of Columbia, Inc. v. Comer, 582 U.S. 449, 451, 137 S.Ct. 2012, 2016, 198 L.Ed.2d 551, 553 (2017).*

65. The basis for Defendants' refusal to grant Student Plaintiffs and other similarly situated students the ability to participate in extracurricular and co-curricular activities is Student Plaintiffs' enrollment in a parochial school.

66. Student Plaintiffs are enrolled in parochial schools on account of and to further their religious beliefs and faith.

67. Defendants are forcing Plaintiffs to choose between their religious beliefs and the generally available benefit of participation in the extracurricular and co-curricular activities of the State College Area School District.

68. Student Plaintiffs' status as parochial school students disqualifies them from participation in the extracurricular and co-curricular activities of the State College Area School District under the aforesaid discriminatory policies.

69. Chief Justice Roberts further opined, "It has remained a fundamental principal of this Court's free exercise jurisprudence that laws imposing 'special disabilities on the basis of … religious status' triggers the strictest scrutiny." *Id.* at *552-452, citing*, *Church of Lukumi Babalu Aye, Inc. v. Hialeah, 508 U.S. 520, 533, 113 S.Ct. 2217, 2019-2021, 124 L.Ed.2d 472 (1993)*.

70. Defendant's custom, practice, and policy of excluding parochial school students from participation in the extracurricular and co-curricular activities of the State College Area School District is subject to the highest standard of review and cannot not survive strict scrutiny by this Honorable Court.

71. Defendants permit students enrolled in home school programs to participate in extracurricular and co-curricular activities while excluding parochial school student from participating in the same activities.

72. Defendants permit students enrolled in charter schools to participate in extracurricular and co-curricular activities while excluding parochial school student from participating in the same activities.

*73.* Chief Justice Roberts further opined, "The Free Exercise Clause 'protect[s] religious observers against unequal treatment' and subjects to the strictest scrutiny laws that target the religious for 'special disabilities' based on their 'religious status.'" *Id. at 458-459, citing, Church of Lukumi Barbalu Aye, supra.*

74. The Unites States Supreme Court has made it clear that "… denying a generally available benefit solely on account of religious identity imposes a penalty on the free exercise of religion that can be justified only by a state interest 'of the highest order." *Id., citing, McDaniel v. Paty*, 435 U.S. 618, 628, 98 S.Ct. 1322, 55 L.Ed.2d 593 (1978) (plurality opinion) (quoting Wisconsin v. Yoder; 406 U.S. 205, 215, 92 S.Ct. 1526, 32 L.Ed.2d. 15 (1972)).

75. Defendants have a custom, practice, and policy of denying a generally available benefit to Plaintiffs solely on account of Plaintiffs' religious identify.

76. Plaintiffs have suffered harm as a direct result of Defendants' discriminatory conduct towards them and similarly situated members of the Religious Rights Foundation.

**COUNT II**
**PLAINTIFFS v. DEFENDANTS**
**VIOLATION OF THE FOURTEENTH AMENDMENT**
**EQUAL PROTECTION CLAUSE - 42 U.S.C. §1983**

77. Paragraph 1 through 76 of this Complaint are incorporated herein by reference and made a part hereof as if fully set forth herein.

78. Under the Equal Protection clause, Section I of the Fourteenth Amendment, "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S.C.A. Const. Amend. XIV, § I; *City of Cleburne v. Cleburne Living Center,* 473 U.S. 432 (1985).

79. The purpose of the Equal Protection Clause of the Fourteenth Amendment is to secure every person within a state's jurisdiction is protected against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents. *See Village of Willowbrook v. Olech,* 528 U.S. 562, 564, 120 S. Ct. 1073 (2000).

80. "The Equal Protection Clause 'announces a fundamental principle: the State must govern impartially,' and 'directs that all persons similarly circumstanced shall be treated alike.' Therefore, '[g]eneral rules that apply evenhandedly to all persons within the jurisdiction unquestionably comply' with the Equal Protection Clause. Only when a state 'adopts a rule that has a special impact on less than all persons subject to its jurisdiction' does a question arise as to whether the equal protection clause is violated." *See Alexander v. Whitman,* 114 F.3d 1392, 1403, (3d Cir.1997), quoting, *New York City Transit Authority v. Beazer,* 440 U.S. 568, 587, 99 S.Ct. 1355, 1367, 59 L.Ed.2d 587 (1979); quoting, *Plyler v. Doe,* 457 U.S. 202, 216, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786 (1982), quoting, *F.S. Royster Guano Co. v. Virginia,* 253 U.S. 412, 415, 40 S.Ct. 560, 561-62, 64 L.Ed. 989 (1920).

81. The Free Exercise Clause of the First Amendment, which has been applied to the States through the Fourteenth Amendment provides that "Congress shall make no law respecting an establishment of religion or *prohibiting the free exercise thereof..." See Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,*

508 U.S. 520, 531, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993), *citing*, *Cantwell v. Connecticut,* 310 U.S. 296, 303, 60 S.Ct. 900, 903, 84 L.Ed. 1213 (1940).

82.  "At a minimum, the protections of the Free Exercise Clause pertain if the law at issue discriminates against some or all religious beliefs or regulates or prohibits conduct because it is undertaken for religious reasons." *See Lukumi, supra* at 532, citing, *Braunfeld v. Brown,* 366 U.S. 599, 607, 81 S.Ct. 1144, 1148, 6 L.Ed.2d 563 (1961); and *Fowler v. Rhode Island,* 345 U.S. 67, 69-70, 73 S.Ct. 526, 527, 97 L.Ed. 828 (1953).

83.  "Official action that targets religious conduct for distinctive treatment cannot be shielded by mere compliance with the requirement of facial neutrality. The Free Exercise Clause protects against governmental hostility, which is masked, as well as overt. 'The Court must survey meticulously the circumstances of governmental categories to eliminate, as it were, religious gerrymanders.'" *See Lukumi, supra* at 534, *quoting*, *Walz v. Tax Comm'n of New York City,* 397 U.S. 664, 696, 90 S.Ct. 1409, 1425, 25 L.Ed.2d 697 (1970).

84.  "Nor does it make a difference that faith-based bigotry did not motivate the orders. The constitutional benchmark is 'government *neutrality,'* not 'governmental avoidance of bigotry.'" *See Roberts v. Neace,* 958 F.3d 409, 415 (2020), citing, *Colo. Christian Univ. v. Weaver,* 534 F.3d 1245, 1260 (10th Cir. 2008).

85. "A law is not neutral and generally applicable unless there is 'neutrality between religion and non-religion.' *Id.*, citing, *Hartmann v. Stone,* 68 F.3d 973, 978 (6th Cir, 1995).

86. "And a law can reveal a lack of neutrality by protecting secular activities more than comparable religious ones." *Id.*, citing, *Hartmann* at 979; *Midrash Sephardi, Inc. v. Town of Surfside,* 366 F.3d 1214, 1233-35, 1234 n.16 (11th Cir. 2004); *see also Shrum v. City of Coweta,* 449 F.3d 1132, 1145 (10th Cir. 2006) ("[T]he Free Exercise Clause is not confined to actions based on animus.").

87. Home school students are provided a benefit, participation in extracurricular and co-curricular activities along with participation in instructional activities and classes, that are generally available to the students enrolled in the State College Area School District.

88. Charter school students are provided a benefit, participation in extracurricular and co-curricular activities that are generally available to the students enrolled in the State College Area School District.

89. Defendants expend a significant amount of public funds to provide extracurricular and co-curricular activities, instruction activities and classes that are generally available for the benefit of students enrolled in the State College Area School District; home school students who are not enrolled in the State College Area School District; and charter school students who are enrolled in charter schools.

90. The basis for Defendants' refusal to permit Student Plaintiffs and other similarly situated students to participate in extracurricular and co-curricular activities is Student Plaintiffs' enrollment in a parochial school.

91. Defendant's custom, practice, and policy of excluding parochial school students from participation in the extracurricular and co-curricular activities of the State College Area School District is subject to the highest standard of review and cannot not survive strict scrutiny by this Honorable Court.

92. Defendants have a custom, practice, and policy of denying a generally available benefit to Plaintiffs solely on account of Plaintiffs' religious identify.

93. Plaintiffs have suffered harms as a direct result of Defendants' discriminatory conduct towards them and similarly situated members of the Religious Rights Foundation.

94. Injunctive relief is necessary to prevent continued irreparable harm to Plaintiffs that cannot be adequately compensated by damages.

95. The violation of a constitutional right is per se irreparable harm. "The loss of First Amendment freedoms, for even minimal periods of time unquestionably constitutes irreparable injury." *See Roman Catholic Diocese of Brooklyn v. Cuomo, __ U.S. __, 141 S.Ct. 63, 67-68, 208 L.Ed.2d 206, (2020), quoting, Elrod v. Burns, 427, U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976).*

96. Defendants will not be harmed if injunctive relief is granted to Plaintiffs.

97. Injunctive relief would restore the "status quo" under which Plaintiffs fully enjoyed the Free Exercise Rights protected by the First Amendment.

98. Plaintiffs' prayer for relief is clear and Plaintiffs are likely to prevail on the merits of their claims.

99. "It has remained a fundamental principal of this Court's free exercise jurisprudence that laws imposing 'special disabilities on the basis of … religious status' triggers the strictest scrutiny." *Id., citing*, *Church of Lukumi Babalu Aye, Inc. v. Hialeah, 508 U.S. 520, 533, 113 S.Ct. 2217, 2019-2021, 124 L.Ed.2d 472 (1993)*.

100.   Plaintiffs' prayer for relief is narrowly tailored to abate the improper conduct of Defendants and injunctive relief will not adversely impact the public interest.

101.   Plaintiffs have satisfied each of the elements necessary for injunctive relief and injunctive relief is appropriate in this matter to prevent further violations of Plaintiffs' Constitutional rights.

## PRAYER FOR RELIEF

Plaintiffs respectfully requests this Honorable Court grant relief as follows:

1. An Order finding Defendants' conduct in violation of Plaintiffs' rights as guaranteed by the Free Exercise Clause of the First Amendment to the United States Constitution.

2. An Order finding Defendants' conduct in violation of Plaintiffs' rights as guaranteed by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

3. An Order enjoining Defendants' discriminatory conduct.

4. An Order requiring Defendants to grant Student Plaintiffs, and other similarly situated students, the right to participate in the extracurricular and co-curricular activities, including instructional activities and classes, as are generally available to the students enrolled in the State College Area School District.

5. An Order awarding counsel fees and costs to Plaintiffs and requiring Defendants to reimburse the same.

6. An Order granting any other relief deemed appropriate by the Court

Respectfully submitted,

**DILLON McCANDLESS KING COULTER & GRAHAM LLP**

By: */s/ Thomas E. Breth*
    Thomas E. Breth, Esquire
    PA I.D. No. 66350
    tbreth@dmkcg.com
    Thomas W. King, III, Esquire
    PA I.D. No. 21580
    tking@dmkcg.com

    *Counsel for Plaintiffs*

    *Special Counsel to the Thomas More Society*