**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| RELIGIOUS RIGHTS FOUNDATION OF PA, et al. | CIVIL ACTION |
| Plaintiffs, | |
| v. | No. 4:23-cv-01144-MWB |
| STATE COLLEGE AREA SCHOOL DISTRICT and BOARD OF SCHOOL DIRECTORS OF THE STATE COLLEGE AREA SCHOOL DISTRICT | |
| Defendants. | Electronically Filed via ECF |

## ORDER

AND NOW, this ____ day of _____, 2023, upon consideration of the Motion to Dismiss Plaintiffs' Complaint ("Motion") filed by Defendants, State College Area School District and Board of School Directors of the State College Area School District (collectively "School District"), and the opposition thereto of Plaintiffs, it is hereby ORDERED and DECREED that the Motion is GRANTED. It is also ORDERED that all claims in the Complaint against the School District are dismissed with prejudice.

IT IS SO ORDERED.

_____
MATTHEW W. BRANN, CHIEF JUDGE
UNITED STATES DISTRICT JUDGE

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RELIGIOUS RIGHTS FOUNDATION OF PA, et al. | : | CIVIL ACTION |
| | : | |
| Plaintiffs, | : | |
| | : | No. 4:23-cv-01144-MWB |
| v. | : | |
| | : | |
| STATE COLLEGE AREA SCHOOL DISTRICT and BOARD OF SCHOOL DIRECTORS OF THE STATE COLLEGE AREA SCHOOL DISTRICT | : | |
| | : | |
| | : | |
| | : | Electronically Filed via ECF |
| Defendants. | : | |
| | : | |

## DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Defendants, State College Area School District and Board of School Directors of the State College Area School District (collectively "School District"), by and through their undersigned counsel, pursuant to Federal Rule of Civil Procedure 12(b)(6), submit this Motion to Dismiss Plaintiffs' Complaint.

## I.    INTRODUCTION

Plaintiffs are two sets of parents and their minor school-aged children who attend parochial schools located in the geographic boundary of the School District. They asked the School District for permission to participate in School District sponsored activities. In response, the Superintendent denied the requests because, for the reasons stated in an email message cited in the Complaint, the School District does not permit students who attend "private" schools to participate in such activities. Plaintiffs, displeased with the School District's decision, have made claims in the Complaint where they inexplicably changed the word "private" in the Superintendent's email and replaced it with "parochial," and they have repeatedly pled that the School District refused the

students' participation *because of* their enrollment in *parochial* schools. That is not an accurate recitation of the facts presented in the Complaint. The policy referenced in the Superintendent's decision was a facially-neutral policy of not permitting *private school* students (whether or not such schools have a religious affiliation) from participating in School District sponsored activities. Thus, under the facts alleged by the Plaintiffs, the School District has not coerced any of the Plaintiffs from refraining from practicing their chosen religions. As a result, neither the Free Exercise Clause of the First Amendment nor the Equal Protection Clause of the Fourteenth Amendment of the federal constitution is implicated by the School District's decision. As a facially-neutral policy, the School District's policy of not permitting private school students from participating in School District sponsored activities should be afforded rational basis review. Under such a review—where the School District's policy is afforded a *presumption* of rationality—the School District's policy easily passes. As a result, Plaintiffs' Complaint, which is brought under authority of 42 U.S.C. § 1983, cannot be amended to state a proper claim, and the claims in the Complaint should therefore be dismissed with prejudice.

## II.    FACTUAL BACKGROUND

1.      Plaintiffs are: (1) Religious Rights Foundation of PA ("RRFPA"), a Pennsylvania non-profit corporation; (2) C.Y. and L.Y., themselves and as parents and natural guardians of F.Y., a minor; (3) B.H. and K.H., themselves and as parents and natural guardian of R.H., a minor.[1] Complaint, ¶ 1, 4, 7 (ECF 1). A copy of the Complaint is attached hereto as Exhibit A.

---

[1] As this is a motion to dismiss, we will refer to the "facts" only as the Plaintiffs have pled them and will refrain from pointing out disagreements Defendants have about the pled facts.

2.      RRFPA has a stated mission of protecting, defending, and promoting the religious rights, belief, opportunities, and tenants [sic] of faith of its members, their families, and the greater faith community in the Commonwealth of Pennsylvania. Complaint, ¶ 2.

3.      C.Y., L.Y., and F.Y. are members of the RRFPA, and they reside within the geographical boundary of the School District. Complaint, ¶ 5, 44, 48.

4.      Student F.Y., a minor, attends a parochial school located within the geographical boundary of the School District, pursuant to his decision to attend a parochial school in furtherance of F.Y.'s religious beliefs. Complaint, ¶ 6.

5.      B.H., K.H., and R.H. are members of the RRFPA, and they reside within the geographical boundary of the School District. Complaint, ¶ 7-8, 44, 48.

6.      Student R.H., a minor, attends a parochial school located within the geographical boundary of the School District, pursuant to his decision to attend a parochial school in furtherance of F.Y.'s religious beliefs. Complaint, ¶ 8-9.[2]

7.      The School District is a public school district organized and existing in accordance with the laws of the Commonwealth of Pennsylvania. The Defendant, Board of School Directors of the State College Area School District (the "School Board"), is the governing body of the State College Area School District.[3] Complaint, ¶ 13-14.

8.      The School Board has approved and authorized more than 100 extracurricular and co-curricular opportunities, including 63 advance placement courses at the high school, 76 school

---

[2] Defendants will use Plaintiffs' shorthand references to both sets of parents ("Parent Plaintiffs") and both sets of students ("Student Plaintiffs").

[3] The School Board is not an entity separate from the School District. *See e.g.*, *Adams v. School Board of Wyoming Valley West School District*, 53 F.R.D. 267, 269 (M.D. Pa. 1971) (finding there is no meaningful difference between a School Board and a School District).

activities and clubs, 26 high school athletic teams, and various other activities in the middle and elementary schools. Complaint, ¶ 24.

9.      The School District's website contains a statement that in part says:

> The State College Area School District is an equal opportunity education institution and will not discriminate on the basis of race, color, age, creed, religion, gender, sexual orientation, gender identity, ancestry, national origin or disability in its activities, programs, or employment practices . . . .

Complaint, ¶ 25.

10.     The School Board has a policy of non-discrimination that provides in part that:

> The State College Area School District is committed to providing to all students access to equitable educational programs and activities in a safe, position learning environment that is free from all forms of harassment and discrimination regardless of race, color, age, creed, religion, gender, sexual orientation, gender identity, ancestry, national origin, marital status, pregnancy or handicap/disability.

Complaint, ¶ 26.

11.     The School District permits students who reside within the geographical boundaries of the School District and who are enrolled in a home school program or in a charter school to participate in School District sponsored extracurricular and co-curricular activities. Complaint, ¶ 27, 32 (home schooling), 35, 36-37 (charter school students), 40.

12.     Neither home schooled students nor charter school students are enrolled in School District schools. Complaint, ¶ 33, 38.

13.     Neither of the Student Plaintiffs is enrolled in the School District; they are enrolled in parochial schools. Complaint, ¶ 42.

14.     If Student Plaintiffs enrolled in the School District, they would be eligible to participate in the extra-curricular and co-curricular activities of the School District. Complaint, ¶ 50.

15. Parent Plaintiffs have enrolled their children (the Student Plaintiffs) in parochial schools to further the religious beliefs of both the Parent Plaintiffs and the Student Plaintiffs, and they participate in religious instruction and activities at the schools. Complaint, ¶ 51-54, 66.

16. At their parochial schools, Student Plaintiffs do not have the opportunity to participate in the types of extra-curricular activities and co-curricular activities generally available to the students of the School District, home school students, and charter school students. Complaint, ¶ 55.

17. Parent Plaintiffs asked the School District to permit their children (Student Plaintiffs) to participate in extra-curricular activities and co-curricular activities of the School District. Complaint, ¶ 57.

18. In response, and by email dated May 24, 2023, the Superintendent of the School District informed a parent of C.Y. as follows:

> Thank you for reaching out. We have put a lot of thought into this issue through discussions with other administrators, the school board, and our school solicitor. After carefully considering it, we cannot grant your request to change our longstanding practice of not having private school students participate on our PIAA sports teams. The reason is the district has ample, and sometimes excess, participation for our teams, so there is no need to expand. Additionally, if we allow private school students to take part, we could be taking away opportunities from SCASD students.

Complaint, ¶ 58.

## III.   GROUNDS FOR MOTION

### A.   Plaintiffs Fail to State a Claim of a Violation of the Free Exercise Clause of the First Amendment or of the Equal Protection Clause of the Fourteenth Amendment

19. While the Complaint presents claims under the Free Exercise Clause of the First Amendment and the Equal Protection Clause of the Fourteenth Amendment, courts have noted that in considering free exercise and equal protection questions like those presented here, the

claims "are functionally identical[,] and it would be redundant to treat them separately." *Chapman v. Pa. Interscholastic Ath. Ass'n*, 2014 U.S. Dist. LEXIS 84299, *7 (M.D. Pa., June 18, 2014), citing *Trefelner ex rel. Trefelner v. Burrell Sch. Dist.*, 655 F. Supp. 2d 581, 590 (W.D. Pa. 2009) (quoting *Hill v. City of Scranton*, 411 F.3d 118, 126 (3d Cir. 2005). Thus, because the free exercise clause "is the strongest guarantee of the rights at issue . . . the Court [should] only address [P]laintiffs' claims under the free exercise clause." *Id.*

20.     The Free Exercise Clause provides that "Congress shall make no law . . . prohibiting the free exercise [of religion]." U.S. Const. amend. I.

21.     "An essential element to a claim under the free exercise clause is some form of governmental coercion of actions which are contrary to religious belief." *Sequoyah v. Tenn. Valley Auth.*, 480 F. Supp. 608, 611 (E.D. Tenn. 1979).[4] The alleged policy of the School District, however,—a facially-neutral policy—has no coercive effect on Plaintiffs' religious beliefs or practices. The School District is simply not compelling any of the Plaintiffs to act in violation of their conscience.

22.     Plaintiffs have alleged in a conclusory fashion that "Defendants have historically refused to grant Student Plaintiffs and other similarly situated parochial school students the ability to participate in extra-curricular and co-curricular activities of the School District." Complaint, ¶ 59.

---

[4] Citing *Wooley v. Maynard*, 430 U.S. 705, 97 S. Ct. 1428, 51 L. Ed. 2d 752 (1977); *Wisconsin v. Yoder*, 406 U.S. 205, 92 S. Ct. 1526, 32 L. Ed. 2d 15 (1972); *Board of Education v. Allen*, 392 U.S. 236, 248-249, 88 S. Ct. 1923, 20 L. Ed. 2d 1060 (1968); *Sherbert v. Verner*, 374 U.S. 398, 83 S. Ct. 1790, 10 L. Ed. 2d 965 (1963); *Abington School District v. Schempp*, 374 U.S. 203, 223, 83 S. Ct. 1560, 10 L. Ed. 2d 844 (1963); *Torcaso v. Watkins*, 367 U.S. 488, 81 S. Ct. 1680, 6 L. Ed. 2d 982 (1961); *Braunfeld v. Brown*, 366 U.S. 599, 81 S. Ct. 1144, 6 L. Ed. 2d 563 (1961).

23.     Plaintiffs make no allegations in support of their conclusory allegation that the School District has a history of "refusing" to permit "parochial school students" to participate in extra-curricular and co-curricular activities of the School District (Complaint, ¶ 59-61). The alleged policy is that "private" school students have been refused permission. In addition, despite Plaintiffs' allegation that there is a similar history with respect to the Student Plaintiffs themselves (Complaint, ¶ 59), they make no allegations in support of such a history.

24.     Plaintiffs also allege—not only in a conclusory fashion, but in a manner that contradicts the Superintendent's email—that the School District refused to permit the students to participate because of their enrollment in a *parochial* school. There is no allegation or supporting fact presented in the Complaint that supports that conclusion. Again, the alleged policy (and the alleged decision) was that permission would not be granted because the students attended private school.

25.     Plaintiffs allege that "Defendants are forcing Plaintiffs to choose between their religious beliefs and the generally available benefit of participation in the extracurricular and co-curricular activities of the [School District]." Complaint, ¶ 67. Not only is this conclusory allegation not supported by any allegations in the Complaint, but it is a classic example of a false choice. If Student Plaintiffs attended either a public school in the School District, or a parochial school (i.e., a religious private school), or a non-religious private school, they could exercise their religious beliefs as they pleased, and their religious exercises would be unaffected by the statement made by the Superintendent that is quoted in the Complaint.

26.     Without any explanation or supporting allegations, Plaintiffs took the Superintendent's statement—a statement that says that the School District does not permit "private" school students from participating on School District sports teams—and concocted it to

mean that the decision was made "*solely* on account of religious identity." Complaint, ¶ 74-75. The allegations presented do not and cannot support such a conclusion, and the Complaint cannot rest upon such conclusory allegations.

27.     The alleged policy is facially neutral, and it applies to all private schools and students attending private schools, whether or not the schools or the students have a religious affiliation or engage in religious activities.

28.     Numerous courts have found that to the extent school athletics eligibility requirements may burden religious freedom by ruling students ineligible for interscholastic sports at the private religious school of their choice, such a burden does not offend the Constitution. *See e.g.*, *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 303, 105 S. Ct. 1953, 85 L. Ed. 2d 278 (1985) ("It is virtually self-evident that the Free Exercise Clause does not require an exemption from a governmental program unless, at a minimum, inclusion in the program actually burdens the claimant's freedom to exercise religious rights."); *Chapman*, *supra*, *Walsh v. Louisiana High School Athletic Association*, 616 F.2d 152 (5th Cir. 1980); *Robbins v. Indiana High School Athletic Ass'n*, 941 F. Supp. 786, 792 (S.D. Ind. 1996); *Pelletier v. Maine Principals' Association*, 261 F. Supp. 2d 10 (D. Me. 2003).

### B.     The Court Should Uphold the Alleged Policy Under Rational Basis Review and Dismiss the Complaint with Prejudice

29.     If a law is "neutral" and "generally applicable," and it burdens religious conduct only incidentally, the rule is subject to rational basis review and "the Free Exercise Clause offers no protection." *Chapman*, *supra*, citing *Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*, 309 F.3d 144, 165 (3d Cir. 2002). "Under rational-basis review, the challenged classification must be upheld if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Angstadt v. Midd-W. Sch. Dist.*, 377 F.3d 338, 345 (3d Cir. 2004) (cleaned up).

30.     Rational basis review is highly deferential, and it merely requires "the action [to] be rationally related to a legitimate government objective." *Tenafly Eruv Ass'n, Inc.*, *supra*, at 178.

31.     "Under rational basis review, the challenged classification must be upheld 'if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'" *Donatelli v. Mitchell*, 2 F.3d 508, 513 (3d Cir. 1993) (quoting *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313, 113 S. Ct. 2096, 124 L. Ed. 2d 211 (1993).

32.     In determining whether a decision withstands rational basis review on a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), "every benefit of the doubt goes to [Plaintiff]" but the Court must grant great deference to [Defendant]." *Chapman*, *supra*, citing *Brace v. Cnty. of Luzerne*, 873 F. Supp. 2d 616, 630 *aff'd* 535 F. App'x 155 (3d Cir. 2013). See also *Wroblewski v. City of Washburn*, 965 F.2d 452, 460 (7th Cir. 1992) ("To survive a motion to dismiss for failure to state a claim, a plaintiff must allege facts sufficient to overcome the presumption of rationality that applies to government classification.")

33.     The alleged policy of the School District easily passes rational basis review. The statement given by the Superintendent provides that ". . . the [School District] has ample, and sometimes excess, participation for [its] teams, so there is no need to expand. Additionally, if [the School District] allow[s] private school students to take part, [it] could [result in] opportunities [being taken away] from [School District] students." Complaint, ¶ 58.

34.     The rational basis for the Superintendent's decision enjoys a presumption of rationality, and Plaintiffs have not alleged facts sufficient to overcome the presumption. *See* ¶ 32 above. Under this minimal standard of review, the School District has no obligation to produce evidence to sustain the rationality of its decision. *Chapman*, *supra* at *27 n. 6. "Indeed, such a

classification can be upheld as constitutional even when it is based on rational speculation rather than on empirical data." *Id.*

35.     The Court should dismiss Plaintiffs' claims (both of which are brought under 42 U.S.C. § 1983) with prejudice. The grant or denial of an opportunity to amend is within the discretion of the District Court, and a Court need not grant leave to amend where amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Amendment is futile "if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted." *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000).

36.     Dismissal of constitutional claims may be made with prejudice under Rule 12(b)(6) upon a finding that a rational basis has clearly been stated and not adequately challenged by the plaintiffs. See *Angstadt*, 377 F.2d at 345. Because the alleged policy satisfies the rational basis standard, and no additional pleading will change the outcome, Plaintiffs' claims must fail and should be dismissed with prejudice. See *Laudadio v. Se. Pa. Youth Lacross Ass'n*, No. 08-1525, 2008 U.S. Dist. LEXIS 33224, 2008 WL 1820942, at *4 (E.D. Pa. Apr. 23, 2008) (finding that granting leave to amend would be futile in part because "defendants have put forth a rational basis for the rule . . . the complaint cannot defeat rational basis review").

## IV.    CONCLUSION

WHEREFORE, for the reasons stated above and in the supporting brief that will accompany this motion, Defendants' respectfully request the Court to hold that the Complaint fails to state a claim under either the Free Exercise Clause of the First Amendment or the Equal Protection Clause of the Fourteenth Amendment, and that as a result, all of Plaintiffs' claims must be dismissed with prejudice.

Respectfully submitted,

_____/s/ Paul J. Cianci_____
Michael I. Levin
Paul J. Cianci
LEVIN LEGAL GROUP, P.C.
1800 Byberry Road, Suite 1301
Huntingdon Valley, PA 19006
Phone (215) 938-6378
mlevin@levinlegalgroup.com
pcianci@levinlegalgroup.com
*Attorneys for Defendants, State College Area School District and Board of School Directors of the State College Area School District*

Dated: September 11, 2023

## <u>CERTIFICATE OF SERVICE</u>

I certify that on the below date I electronically filed the foregoing Defendants' Motion to Dismiss Complaint and proposed form of order and that these documents are available for viewing and downloading from the ECF system and by all counsel of record.


<u>        /s/ Paul J. Cianci        </u>
Paul J. Cianci
LEVIN LEGAL GROUP, P.C.
*Attorneys for Defendants, State College Area School District and Board of School Directors of the State College Area School District*

Dated: September 11, 2023

# Exhibit "A"

# Exhibit "A"

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Religious Rights Foundation of Pa; a Pennsylvania non-profit corporation; C.Y. and L.Y. individually and as the parents and natural guardians of F.Y., a minor; B.H. and K.H. individually and as the parents and natural guardians of R.H., a minor, | : : : : : : : | **COMPLAINT**<br><br>Filed on Behalf of:  All Plaintiffs |
| Plaintiffs, | : : | Counsel of Record for Plaintiffs: |
| v. | : : : | Thomas E. Breth<br>PA. ID. No. 66350<br>tbreth@dmkcg.com |
| State College Area School District; Board of School Directors of the State College Area School District, | : : : | Thomas W. King, III<br>PA ID. No. 21580 |
| Defendants**.** | : : : | tking@dmkcg.com |
| | : : | **DILLON McCANDLESS KING** |
| | : : : : : : | **COULTER & GRAHAM LLP**<br>128 West Cunningham Street<br>Butler, PA 16001<br>Telephone: (724) 283-2200<br>Facsimile: (724) 283-2298 |
| | : : : | *Special Counsel for Thomas More Society* |
| | : : : : : : : : : : | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

Religious Rights Foundation of PA; a : <br>
Pennsylvania non-profit corporation; C.Y. : <br>
and L.Y., individually and as the parents and :   No.: <br>
natural guardians of F.Y., a minor; and B.H. : <br>
and K.H., individually and as the parents and : <br>
natural guardians of R.H., a minor. : <br>
                               : <br>
          Plaintiffs, : <br>
                               : <br>
    v. : <br>
                               : <br>
State College Area School District; Board of : <br>
School Directors of the State College Area : <br>
School District, : <br>
                               : <br>
          Defendants. : <br>
                               :

## COMPLAINT

Plaintiffs, Religious Rights Foundation of PA, a Pennsylvania non-profit corporation; C.Y. and L.Y., individually and as parents and natural guardians of F.Y., a minor; B.H. and K.H., individually and as parents and natural guardians of R.H., a minor, file the within Complaint averring in support thereof as follows:

## PARTIES

1.  Plaintiff, Religious Rights Foundation of PA, is a Pennsylvania non-profit corporation, organized and existing in accordance with the laws of the Commonwealth of Pennsylvania, with a mailing address of 3091 Enterprise Drive,

Suite 200, State College, Centre County, Commonwealth of Pennsylvania (hereinafter referred to as "Religious Rights Foundation").

2.  The mission of the Religious Rights Foundation and its members is to protect, defend, and promote the religious rights, beliefs, opportunities, and tenants of faith of its members, their families, and the greater faith community within the Commonwealth of Pennsylvania.

3.  The Religious Rights Foundation is acting to protect, defend and promote the religious rights of the students who are eligible to attend public school districts within the Commonwealth of Pennsylvania and to participate in the extracurricular and co-curricular activities of the public school districts, but are denied this generally available benefit due to their enrollment in a parochial school or other religious based educational institution.

4.  Plaintiffs, C.Y. and L.Y., individually and as parents and natural guardians of F.Y., a minor, are individuals residing in Centre County, Commonwealth of Pennsylvania (hereinafter referred to respectively as "Parent C.Y. Plaintiffs" and "Student F.Y. Plaintiff").

5.  Parent C.Y. Plaintiffs and Student F.Y. Plaintiff reside within the State College Area School District. Student F.Y. Plaintiff is a minor who is eligible in all material respects to attend the State College Area School District and to participate in the extracurricular and co-curricular activities of the public school district. Parent

C.Y. Plaintiffs and Student F.Y. Plaintiff are members of the Religious Rights Foundation. Parent C.Y. Plaintiffs are taxpayers in the State College Area School District and Commonwealth of Pennsylvania.

6.  Student F.Y. Plaintiff attends a parochial school located within the State College Area School District. Parent C.Y. Plaintiffs made the decision to have Student F.Y. Plaintiff attend a parochial school in the furtherance of their religious beliefs. Student F.Y. Plaintiff also made the decision to attend a parochial school in the furtherance of Student F.Y. Plaintiff's religious beliefs.

7.  Plaintiffs, B.H. and K.H., individually and as parents and natural guardians of R.H., a minor, are individuals residing in Centre County, Pennsylvania (hereinafter referred to respectively as "Parent B.H. Plaintiffs" and "Student R.H. Plaintiff").

8.  Parent B.H. Plaintiffs and Student R.H. Plaintiff reside within the State College Area School District. Student R.H. Plaintiff is a minor who is eligible in all material respects to attend the State College Area School District and to participate in the extracurricular and co-curricular activities of the public school district. Parent B.H. Plaintiffs and Student R.H. Plaintiff are members of the Religious Rights Foundation of PA. Parent B.H. Plaintiffs are taxpayers in the State College Area School District and Commonwealth of Pennsylvania.

9.   Student R.H. Plaintiff attends a parochial school located within the State College Area School District. Parent B.H. Plaintiffs made the decision to have Student R.H. Plaintiff attend a parochial school in the furtherance of their religious beliefs. Student R.H. Plaintiff also made the decision to attend a parochial school in the furtherance of Student R.H. Plaintiff's religious beliefs.

10. The above referenced parents are hereinafter collectively referred to as "Parent Plaintiffs" and the above referenced students are collectively referred to as "Student Plaintiffs."

11. As members of the Religious Rights Foundation, Parent Plaintiffs represent the interests of their minor children, along with other parents and minor children who are members of the Religious Rights Foundation and who are eligible in all material respects to attend the State College Area School District and to participate in the extracurricular and co-curricular activities of the public school district.

12. In accordance with its mission, the Religious Right Foundation is acting to protect and defend its members rights as guaranteed by the First Amendment to the Constitution of the United States of America.

13. Defendant, State College Area School District (hereinafter "District Defendant"), is a public school district organized and existing in accordance with the laws of the Commonwealth of Pennsylvania with its administrative offices

located at 240 Villa Crest Drive, State College, Centre County, Commonwealth of Pennsylvania.

14. Defendant, Board of School Directors (hereinafter "Board Defendant"), is the governing body of the State College Area School District. *24 P.S. §3-301*.

15. As the governing body, Board Defendant has various statutory powers and authority, including, but not limited to, the authority to promulgate rules, regulations, and policies regarding extracurricular and co-curricular activities within its schools. *24 P.S. §5-511*.

16. Defendants are state actors within the Commonwealth of Pennsylvania pursuant to the powers and authority granted public school districts and boards of school directors by the Pennsylvania Public School Code of 1949, *24 P.S. §1-101, et seq., et al*.

## JURISDICTION AND VENUE

17. This Court has original jurisdiction pursuant to 28 U.S.C.A. §1331.

18. Plaintiffs reside within the jurisdiction of the United States District Court for the Middle District of Pennsylvania. Defendant is a public school district within the jurisdiction of the United States District Court for the Middle District of Pennsylvania.

19. This Court has subject matter jurisdiction pursuant to 28 U.S.C.A. §1343(a)(3)(4).

20.  Venue is proper in the Middle District pursuant to 28 U.S.C.A. §§1390(a), 1391(b)(2), as Defendant's conduct as set forth herein occurred within the Middle District of Pennsylvania.

## MATERIAL FACTS

21. The preceding paragraphs are incorporated herein by reference and made a part hereof as if fully set forth herein.

22. As a public school district within the Commonwealth of Pennsylvania, Defendants exist, function, and operate pursuant to the statutory powers, duties, and authority set forth in the Pennsylvania Public School Code of 1949, as amended. *24 P.S. §1-101, et al., et seq.*

23. According to District Defendant's website, it has eight (8) elementary schools (grades K-5), two (2) middle schools (grades 6-8), one (1) high school (grades 9-12), and one (1) Delta Program, an alternative, democratic school with middle and high school levels for grades 6-12. *See https://www.scasd.org*

24. According to District Defendant's website, Board Defendant has approved and authorized more than one hundred (100) extracurricular and co-curricular opportunities, including, but not limited to, sixty-three (63) Advanced Placement (AP) and advanced courses at the high school, seventy-six (76) high school activities and clubs, twenty-six (26) high school athletic teams, and various extracurricular and co-curricular activities at the middle and elementary schools.

6

25. According to District Defendant's website, "[t]he State College Area School District is an equal opportunity education institution and will not discriminate on the basis of race, color, age, creed, religion, gender, sexual orientation, gender identity, ancestry, national origin or disability in its activities, programs, or employment practices …"

26. Defendant Board has a Policy of non-discrimination that reads in relevant part "[t]he State College Area School District is committed to providing to all students access to equitable educational programs and activities in a safe, positive learning environment that is free from all forms of harassment and discrimination regardless of race, color, age, creed, religion, gender, sexual orientation, gender identity, ancestry, national origin, marital status, pregnancy or handicap/disability. …" *Policy No. 103 – Nondiscrimination/Discriminatory Harassment – School and Classroom Practices.*

27. Defendants permit students who reside within the State College Area School District and who are enrolled in a home school program "to participate in any activity that is subject to the provisions of section [5-]511, including, but not limited to, clubs, musical ensembles, athletics and theatrical productions, …" *24 P.S. §13-1327.1, Defendant Board Policy No. 137.*

28. Pursuant to the Public School Code, Defendants have the statutory power and authority to permit parochial school students to participate in the extracurricular

and co-curricular activities generally offered to the students of the State College Area School District, along with eligible home school and charter school students.

29. Paragraph (a) of Section 5-511 of the Public School Code states in relevant part at follows:

> "The board of school directors in every school district shall prescribe, adopt, and enforce such reasonable rules and regulations as it may deem proper, regarding (1) the management, supervision, control, or prohibition of exercises, athletics, or games of any kind, school publications, debating, forensic, dramatic, musical, and other activities related to the school program, including raising and disbursing funds for any or all of such purposes and for scholarships, and (2) the organization, management, supervision, control, financing, or prohibition of organizations, clubs, societies and groups of the members of any class, or school, ..."

*24 P.S. §5-511(a).*

30. Paragraph (c) of Section 5-511 of the Public School Code states in relevant part as follows:

> "The board of school directors may (1) permit the use of school property, real or personal, for the purpose of conducting any activity related to the school program, or by any school or class organization, club, society, or group, (2) authorize any school employe or employes to manage, supervise and control the development and conduct of any of such activities, (3) employ or assign any school employe to serve in any capacity in connection with any of such activities."

*24 P.S. §5-511(c).*

31. Paragraph (f) of Section 5-511 of the Public School Code states as follows:

"The board of school directors of any district is hereby authorized to appropriate any monies of the district for the payment of medical and hospital expenses incurred as a result of the participation in such athletic events or games, practice or preparation therefor, or in transportation to or from such athletic events or games, or the practice or preparation therefor, and for the purchase of accident insurance in connection with such participation and transportation."

*24 P.S. §5-511(f).*

32. Board Defendant has approved Board Policy No. 137 – <u>Home School Policy</u> which states in relevant part "… Any home schooled student who would like to participate in an instructional activity or class must submit a request to the Superintendent by a date established by the administration. Any home school students who would like to participate in co-curricular or extra-curricular activities must submit a request to the Superintendent by a date established by the administration. Home school students may participate in health services, standardized testing and the use of facilities normally available to students during the school day. …" *Defendant Board Policy No. 137.*

33. Home school students are not enrolled in the State College Area School District.

34. Home school students satisfy the educational requirements set forth in the Public School Code through a home school program.

35. Defendants provide home school students with a benefit, the ability to participate in extracurricular and co-curricular activities along instructional

activities and classes, that is generally available to the students enrolled in the State College Area School District.

36. Defendants permit students who reside within the State College Area School District and who are enrolled in charter schools to participate in its extracurricular and co-curricular activities. *24 P.S. §17-1719-A.*

37. There are several charter schools within the State College Area School District and the students attending these charter schools who reside within the State College Area School District are eligible to participate in Defendants' extracurricular and co-curricular activities.

38. Charter school students are not enrolled in the State College Area School District.

39. Charter school students are enrolled in charter schools and satisfy the educational requirements set forth in the Public School Code through a charter school program.

40. Defendants provide charter school students with benefits, the ability to participate in extracurricular and co-curricular activities, that is generally available to the students enrolled in the State College Area School District.

41. Defendants expend a significant amount of public funds to provide extracurricular and co-curricular activities, instruction activities and classes that are generally available for the benefit of students enrolled in the State College Area

School District; home school students who are not enrolled in the State College Area School District; and charter school students who are not enrolled in the State College Area School District.

42. Like home school and charter school students, Student Plaintiffs are not enrolled in the State College Area School District. Student Plaintiffs are enrolled in parochial schools and satisfy the educational requirements set forth in the Public School Code through a parochial school program.

43. Plaintiff Religious Rights Foundation joins this Complaint to protect, defend, and promote the religious rights, beliefs, and opportunities of not only the Parent Plaintiffs and Student Plaintiffs, but also, the religious rights, beliefs, and opportunities of similarly situated members of the Religious Rights Foundation.

44. Parent Plaintiffs and Student Plaintiffs are members of the Religious Rights Foundation, and they are representative of the other members of the Religious Rights Foundation who are similarly situated and/or who support the Foundation's efforts to protect the religious rights of its members.

45. Parent Plaintiffs and Student Plaintiffs have suffered, and continue to suffer, an injury in fact, as a direct result of Defendants' discriminatory conduct as set forth herein.

46. Plaintiffs' request relief that will enjoin and prohibit Defendants' from continuing to act in a discriminatory manner toward Plaintiffs and other similarly situated individuals.

### COUNT I
### PLAINTIFFS v. DEFENDANTS
### VIOLATION OF THE FIRST AMENDMENT
### FREE EXERCISE CLAUSE - 42 U.S.C. §1983

47. Paragraph 1 through 46 of this Complaint are incorporated herein by reference and made a part hereof as if fully set forth herein.

48. Parent Plaintiffs and Student Plaintiffs are residents of the State College Area School District.

49. Student Plaintiffs are eligible in all material respects to attend the State College Area School District and to participate in the extracurricular and co-curricular activities the State College Area School District.

50. If Student Plaintiffs enrolled in the State College Area School District, Student Plaintiffs would be eligible to participate in the extracurricular and co-curricular activities of the State College Area School District.

51. Parent Plaintiffs have enrolled their children (Student Plaintiffs) in parochial schools to further both Parent Plaintiffs' and Student Plaintiffs' religious beliefs.

52. Student Plaintiffs regularly participate in religious instruction and activities at their respective parochial schools.

53. Parent Plaintiffs participate in religious activities, along with their children (Student Plaintiffs), at the parochial schools.

54. The religious instruction and activities are an integral part of the educational programs provided to the Student Plaintiffs at their parochial schools.

55. By attending parochial schools, Student Plaintiffs do not have the opportunity to participate in the types of extracurricular and co-curricular activities generally available to the students of the State College Area School District, home school students, and charter school students.

56. Parent Plaintiffs have requested that Defendants permit Student Plaintiffs to participate in extracurricular and co-curricular activities of the State College Area School District.

57. Defendants have denied Parent Plaintiffs requests to permit Student Plaintiffs to participate in extracurricular and co-curricular activities of the State College Area School District.

58. Via email dated May 24, 2023, 11:30 a.m., the Superintendent of the State College Area School District, in response to Plaintiffs' request, informed Parent C.Y. Plaintiff as follows:

> "Thank you for reaching out. We have put a lot of thought into this issue through discussions with other administrators, the school board,

and our school solicitor. After carefully considering it, we cannot grant your request to change our longstanding practice of not having private school students participate on our PIAA sports teams. The reason is the district has ample, and sometimes excess, participation for our teams, so there is no need to expand. Additionally, if we allow private school students to take part, we could be taking away opportunities from SCASD students."

59. Defendants have historically refused to grant Student Plaintiffs and other similarly situated parochial school students the ability to participate in extracurricular and co-curricular activities of the State College Area School District.

60. Defendants have a "longstanding practice," custom, and policy of refusing to permit parochial school students to participate in extracurricular and co-curricular activities of the State College Area School District.

61. Defendants' rationale for its longstanding discriminatory practice(s) is two-fold: there are a sufficient number of State College Area School District students who participate in the activities; and, if permitted to participate, a parochial school student may take away an opportunity to participate from a State College Area School District student.

62. Plaintiff Religious Rights Foundation was formed and exists to help protect, defend, and promote the religious rights, beliefs, opportunities, and tenants of faith of its members, their families, and the greater faith community within the Commonwealth of Pennsylvania.

63. Defendants' discriminatory conduct towards Plaintiffs is exactly the type of discriminatory conduct that the Religious Right Foundation was formed to fight against.

64. Chief Justice Roberts of the Supreme Court of the United States recently opined, "This Court has repeatedly confirmed that denying a generally available benefit solely on account of religious identify imposed a penalty on the free exercise of religious." *See Trinity Lutheran Church of Columbia, Inc. v. Comer, 582 U.S. 449, 451, 137 S.Ct. 2012, 2016, 198 L.Ed.2d 551, 553 (2017).*

65. The basis for Defendants' refusal to grant Student Plaintiffs and other similarly situated students the ability to participate in extracurricular and co-curricular activities is Student Plaintiffs' enrollment in a parochial school.

66. Student Plaintiffs are enrolled in parochial schools on account of and to further their religious beliefs and faith.

67. Defendants are forcing Plaintiffs to choose between their religious beliefs and the generally available benefit of participation in the extracurricular and co-curricular activities of the State College Area School District.

68. Student Plaintiffs' status as parochial school students disqualifies them from participation in the extracurricular and co-curricular activities of the State College Area School District under the aforesaid discriminatory policies.

69. Chief Justice Roberts further opined, "It has remained a fundamental principal of this Court's free exercise jurisprudence that laws imposing 'special disabilities on the basis of … religious status' triggers the strictest scrutiny." *Id.* at *552-452, citing*, *Church of Lukumi Babalu Aye, Inc. v. Hialeah, 508 U.S. 520, 533, 113 S.Ct. 2217, 2019-2021, 124 L.Ed.2d 472 (1993).*

70. Defendant's custom, practice, and policy of excluding parochial school students from participation in the extracurricular and co-curricular activities of the State College Area School District is subject to the highest standard of review and cannot not survive strict scrutiny by this Honorable Court.

71. Defendants permit students enrolled in home school programs to participate in extracurricular and co-curricular activities while excluding parochial school student from participating in the same activities.

72. Defendants permit students enrolled in charter schools to participate in extracurricular and co-curricular activities while excluding parochial school student from participating in the same activities.

*73.* Chief Justice Roberts further opined, "The Free Exercise Clause 'protect[s] religious observers against unequal treatment' and subjects to the strictest scrutiny laws that target the religious for 'special disabilities' based on their 'religious status." *Id. at 458-459, citing, Church of Lukumi Barbalu Aye, supra.*

74. The Unites States Supreme Court has made it clear that "… denying a generally available benefit solely on account of religious identity imposes a penalty on the free exercise of religion that can be justified only by a state interest 'of the highest order." *Id., citing, McDaniel v. Paty*, 435 U.S. 618, 628, 98 S.Ct. 1322, 55 L.Ed.2d 593 (1978) (plurality opinion) (quoting Wisconsin v. Yoder; 406 U.S. 205, 215, 92 S.Ct. 1526, 32 L.Ed.2d. 15 (1972)).

75. Defendants have a custom, practice, and policy of denying a generally available benefit to Plaintiffs solely on account of Plaintiffs' religious identify.

76. Plaintiffs have suffered harm as a direct result of Defendants' discriminatory conduct towards them and similarly situated members of the Religious Rights Foundation.

## COUNT II
### PLAINTIFFS v. DEFENDANTS
### VIOLATION OF THE FOURTEENTH AMENDMENT
### EQUAL PROTECTION CLAUSE - 42 U.S.C. §1983

77. Paragraph 1 through 76 of this Complaint are incorporated herein by reference and made a part hereof as if fully set forth herein.

78. Under the Equal Protection clause, Section I of the Fourteenth Amendment, "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S.C.A. Const. Amend. XIV, § I; *City of Cleburne v. Cleburne Living Center,* 473 U.S. 432 (1985).

79. The purpose of the Equal Protection Clause of the Fourteenth Amendment is to secure every person within a state's jurisdiction is protected against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents. *See Village of Willowbrook v. Olech,* 528 U.S. 562, 564, 120 S. Ct. 1073 (2000).

80. "The Equal Protection Clause 'announces a fundamental principle: the State must govern impartially,' and 'directs that all persons similarly circumstanced shall be treated alike.' Therefore, '[g]eneral rules that apply evenhandedly to all persons within the jurisdiction unquestionably comply' with the Equal Protection Clause. Only when a state 'adopts a rule that has a special impact on less than all persons subject to its jurisdiction' does a question arise as to whether the equal protection clause is violated." *See Alexander v. Whitman,* 114 F.3d 1392, 1403, (3d Cir.1997), quoting, *New York City Transit Authority v. Beazer,* 440 U.S. 568, 587, 99 S.Ct. 1355, 1367, 59 L.Ed.2d 587 (1979); quoting, *Plyler v. Doe,* 457 U.S. 202, 216, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786 (1982), quoting, *F.S. Royster Guano Co. v. Virginia,* 253 U.S. 412, 415, 40 S.Ct. 560, 561-62, 64 L.Ed. 989 (1920).

81. The Free Exercise Clause of the First Amendment, which has been applied to the States through the Fourteenth Amendment provides that "Congress shall make no law respecting an establishment of religion or *prohibiting the free exercise thereof..." See Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,*

508 U.S. 520, 531, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993), *citing*, *Cantwell v. Connecticut,* 310 U.S. 296, 303, 60 S.Ct. 900, 903, 84 L.Ed. 1213 (1940).

82. "At a minimum, the protections of the Free Exercise Clause pertain if the law at issue discriminates against some or all religious beliefs or regulates or prohibits conduct because it is undertaken for religious reasons." *See Lukumi, supra* at 532, citing, *Braunfeld v. Brown,* 366 U.S. 599, 607, 81 S.Ct. 1144, 1148, 6 L.Ed.2d 563 (1961); and *Fowler v. Rhode Island,* 345 U.S. 67, 69-70, 73 S.Ct. 526, 527, 97 L.Ed. 828 (1953).

83. "Official action that targets religious conduct for distinctive treatment cannot be shielded by mere compliance with the requirement of facial neutrality. The Free Exercise Clause protects against governmental hostility, which is masked, as well as overt. 'The Court must survey meticulously the circumstances of governmental categories to eliminate, as it were, religious gerrymanders.'" *See Lukumi, supra* at 534, *quoting*, *Walz v. Tax Comm'n of New York City,* 397 U.S. 664, 696, 90 S.Ct. 1409, 1425, 25 L.Ed.2d 697 (1970).

84. "Nor does it make a difference that faith-based bigotry did not motivate the orders. The constitutional benchmark is 'government *neutrality,'* not 'governmental avoidance of bigotry.'" *See Roberts v. Neace,* 958 F.3d 409, 415 (2020), citing, *Colo. Christian Univ. v. Weaver,* 534 F.3d 1245, 1260 (10th Cir. 2008).

85. "A law is not neutral and generally applicable unless there is 'neutrality between religion and non-religion.' *Id.*, citing, *Hartmann v. Stone,* 68 F.3d 973, 978 (6th Cir, 1995).

86. "And a law can reveal a lack of neutrality by protecting secular activities more than comparable religious ones." *Id.*, citing, *Hartmann* at 979; *Midrash Sephardi, Inc. v. Town of Surfside,* 366 F.3d 1214, 1233-35, 1234 n.16 (11th Cir. 2004); *see also Shrum v. City of Coweta,* 449 F.3d 1132, 1145 (10th Cir. 2006) ("[T]he Free Exercise Clause is not confined to actions based on animus.").

87. Home school students are provided a benefit, participation in extracurricular and co-curricular activities along with participation in instructional activities and classes, that are generally available to the students enrolled in the State College Area School District.

88. Charter school students are provided a benefit, participation in extracurricular and co-curricular activities that are generally available to the students enrolled in the State College Area School District.

89. Defendants expend a significant amount of public funds to provide extracurricular and co-curricular activities, instruction activities and classes that are generally available for the benefit of students enrolled in the State College Area School District; home school students who are not enrolled in the State College Area School District; and charter school students who are enrolled in charter schools.

90. The basis for Defendants' refusal to permit Student Plaintiffs and other similarly situated students to participate in extracurricular and co-curricular activities is Student Plaintiffs' enrollment in a parochial school.

91. Defendant's custom, practice, and policy of excluding parochial school students from participation in the extracurricular and co-curricular activities of the State College Area School District is subject to the highest standard of review and cannot not survive strict scrutiny by this Honorable Court.

92. Defendants have a custom, practice, and policy of denying a generally available benefit to Plaintiffs solely on account of Plaintiffs' religious identify.

93. Plaintiffs have suffered harms as a direct result of Defendants' discriminatory conduct towards them and similarly situated members of the Religious Rights Foundation.

94. Injunctive relief is necessary to prevent continued irreparable harm to Plaintiffs that cannot be adequately compensated by damages.

95. The violation of a constitutional right is per se irreparable harm. "The loss of First Amendment freedoms, for even minimal periods of time unquestionably constitutes irreparable injury." *See Roman Catholic Diocese of Brooklyn v. Cuomo, __ U.S. __, 141 S.Ct. 63, 67-68, 208 L.Ed.2d 206, (2020), quoting, Elrod v. Burns, 427, U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976).*

96. Defendants will not be harmed if injunctive relief is granted to Plaintiffs.

97. Injunctive relief would restore the "status quo" under which Plaintiffs fully enjoyed the Free Exercise Rights protected by the First Amendment.

98. Plaintiffs' prayer for relief is clear and Plaintiffs are likely to prevail on the merits of their claims.

99. "It has remained a fundamental principal of this Court's free exercise jurisprudence that laws imposing 'special disabilities on the basis of … religious status' triggers the strictest scrutiny." *Id., citing*, *Church of Lukumi Babalu Aye, Inc. v. Hialeah, 508 U.S. 520, 533, 113 S.Ct. 2217, 2019-2021, 124 L.Ed.2d 472 (1993).*

100. Plaintiffs' prayer for relief is narrowly tailored to abate the improper conduct of Defendants and injunctive relief will not adversely impact the public interest.

101. Plaintiffs have satisfied each of the elements necessary for injunctive relief and injunctive relief is appropriate in this matter to prevent further violations of Plaintiffs' Constitutional rights.

## PRAYER FOR RELIEF

Plaintiffs respectfully requests this Honorable Court grant relief as follows:

1. An Order finding Defendants' conduct in violation of Plaintiffs' rights as guaranteed by the Free Exercise Clause of the First Amendment to the United States Constitution.

2. An Order finding Defendants' conduct in violation of Plaintiffs' rights as guaranteed by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

3. An Order enjoining Defendants' discriminatory conduct.

4. An Order requiring Defendants to grant Student Plaintiffs, and other similarly situated students, the right to participate in the extracurricular and co-curricular activities, including instructional activities and classes, as are generally available to the students enrolled in the State College Area School District.

5. An Order awarding counsel fees and costs to Plaintiffs and requiring Defendants to reimburse the same.

6. An Order granting any other relief deemed appropriate by the Court

Respectfully submitted,

**DILLON McCANDLESS KING COULTER & GRAHAM LLP**

By: */s/ Thomas E. Breth*
    Thomas E. Breth, Esquire
    PA I.D. No. 66350
    tbreth@dmkcg.com
    Thomas W. King, III, Esquire
    PA I.D. No. 21580
    tking@dmkcg.com

    *Counsel for Plaintiffs*

    *Special Counsel to the Thomas More Society*

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Religious Rights Foundation of PA, et al. | State College Area School District, et al. |

**(b)** County of Residence of First Listed Plaintiff   Centre County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Centre County
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Thomas E. Breth, Esq. and Thomas W. King, III, Esq.
Dillon McCandless King Coulter & Graham LLP
128 West Cunningham Street, Butler, PA 16001

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1  U.S. Government Plaintiff
- [x] 3  Federal Question *(U.S. Government Not a Party)*
- [ ] 2  U.S. Government Defendant
- [ ] 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY**   **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane        [ ] 365 Personal Injury - | [ ] 690 Other | [ ] 423 Withdrawal | [ ] 376 Qui Tam (31 USC |
| [ ] 130 Miller Act | [ ] 315 Airplane Product           Product Liability | | 28 USC 157 | 3729(a)) |
| [ ] 140 Negotiable Instrument | Liability        [ ] 367 Health Care/ | | **INTELLECTUAL** | [ ] 400 State Reapportionment |
| [ ] 150 Recovery of Overpayment | [ ] 320 Assault, Libel &           Pharmaceutical | | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
| & Enforcement of Judgment | Slander           Personal Injury | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 330 Federal Employers'           Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted | Liability        [ ] 368 Asbestos Personal | | [ ] 835 Patent - Abbreviated | [ ] 460 Deportation |
| Student Loans | [ ] 340 Marine           Injury Product | | New Drug Application | [ ] 470 Racketeer Influenced and |
| (Excludes Veterans) | [ ] 345 Marine Product           Liability | | [ ] 840 Trademark | Corrupt Organizations |
| [ ] 153 Recovery of Overpayment | Liability    **PERSONAL PROPERTY** | | [ ] 880 Defend Trade Secrets | [ ] 480 Consumer Credit |
| of Veteran's Benefits | [ ] 350 Motor Vehicle    [ ] 370 Other Fraud | **LABOR** | Act of 2016 | (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle    [ ] 371 Truth in Lending | [ ] 710 Fair Labor Standards | | [ ] 485 Telephone Consumer |
| [ ] 190 Other Contract | Product Liability  [ ] 380 Other Personal | Act | **SOCIAL SECURITY** | Protection Act |
| [ ] 195 Contract Product Liability | [ ] 360 Other Personal           Property Damage | [ ] 720 Labor/Management | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise | Injury        [ ] 385 Property Damage | Relations | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ |
| | [ ] 362 Personal Injury -           Product Liability | [ ] 740 Railway Labor Act | [ ] 863 DIWC/DIWW (405(g)) | Exchange |
| | Medical Malpractice | [ ] 751 Family and Medical | [ ] 864 SSID Title XVI | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS**   **PRISONER PETITIONS** | Leave Act | [ ] 865 RSI (405(g)) | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [x] 440 Other Civil Rights    **Habeas Corpus:** | [ ] 790 Other Labor Litigation | | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting        [ ] 463 Alien Detainee | [ ] 791 Employee Retirement | **FEDERAL TAX SUITS** | [ ] 895 Freedom of Information |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment    [ ] 510 Motions to Vacate | Income Security Act | [ ] 870 Taxes (U.S. Plaintiff | Act |
| [ ] 240 Torts to Land | [ ] 443 Housing/           Sentence | | or Defendant) | [ ] 896 Arbitration |
| [ ] 245 Tort Product Liability | Accommodations  [ ] 530 General | | [ ] 871 IRS—Third Party | [ ] 899 Administrative Procedure |
| [ ] 290 All Other Real Property | [ ] 445 Amer. w/Disabilities -  [ ] 535 Death Penalty | **IMMIGRATION** | 26 USC 7609 | Act/Review or Appeal of |
| | Employment        **Other:** | [ ] 462 Naturalization Application | | Agency Decision |
| | [ ] 446 Amer. w/Disabilities -  [ ] 540 Mandamus & Other | [ ] 465 Other Immigration | | [ ] 950 Constitutionality of |
| | Other        [ ] 550 Civil Rights | Actions | | State Statutes |
| | [ ] 448 Education      [ ] 555 Prison Condition | | | |
| | [ ] 560 Civil Detainee - | | | |
| | Conditions of | | | |
| | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1  Original Proceeding
- [ ] 2  Removed from State Court
- [ ] 3  Remanded from Appellate Court
- [ ] 4  Reinstated or Reopened
- [ ] 5  Transferred from Another District *(specify)*
- [ ] 6  Multidistrict Litigation - Transfer
- [ ] 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C § 1983

Brief description of cause:
Violation of 1st Amendment Free Exercise and 14th Amendment Equal Protection

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   [ ] Yes   [x] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| 07/10/2023 | /s/Thomas E. Breth |

**FOR OFFICE USE ONLY**

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)   Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)   County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)   Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.   Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.   Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.   Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.   Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.   Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.   Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.   Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Middle District of Pennsylvania ▾

| | |
|---|---|
| Religious Rights Foundation of PA, et al. | ) ) ) ) |
| *Plaintiff(s)* | ) |
| v. | ) Civil Action No. |
| State College Area School District, et al. | ) ) ) |
| *Defendant(s)* | ) ) ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   State College Area School District
240 Villa Crest Drive
State College, PA 16801

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   Thomas E. Breth, Esquire
Dillion McCandless King Coulter & Graham, LLP
128 West Cunningham Street
Butler, PA 16001

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____     _____

*Signature of Clerk or Deputy Clerk*

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❑ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❑ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❑ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❑ I returned the summons unexecuted because _____ ; or

❑ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.


Date: _____               _____
                                              *Server's signature*

                                     _____
                                              *Printed name and title*

                                     _____
                                              *Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Middle District of Pennsylvania ▾

| | |
|---|---|
| Religious Rights Foundation of PA, et al. | ) )  )  )  ) |
| *Plaintiff(s)* | ) |
| v. | ) Civil Action No. |
| State College Area School District, et al. | ) )  )  )  ) |
| *Defendant(s)* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   Board of School Directors of the State College Area School District
240 Villa Crest Drive
State College, PA 16801

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   Thomas E. Breth, Esquire
Dillion McCandless King Coulter & Graham, LLP
128 West Cunningham Street
Butler, PA 16001

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____

*Signature of Clerk or Deputy Clerk*

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .


I declare under penalty of perjury that this information is true.


Date: _____                    _____
                                                                        *Server's signature*

                                                              _____
                                                                        *Printed name and title*

                                                              _____
                                                                        *Server's address*

Additional information regarding attempted service, etc: